# Exhibit 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>               Remaining Debtors. | Chapter 11<br><br>Case No. 17-12560 (BLS)<br><br>(Jointly Administered) |
| MICHAEL GOLDBERG, in his capacity as Liquidating Trustee of the WOODBRIDGE LIQUIDATION TRUST,<br><br>               Plaintiff,<br><br>        vs.<br><br>EDUARDO G. DIAZ and DIAZ RETIREMENT CONSULTANTS,<br><br>               Defendants. | Adversary Proceeding<br>Case No. 19-_____ (BLS) |

## ADVERSARY COMPLAINT: (I) FOR AVOIDANCE AND RECOVERY OF AVOIDABLE TRANSFERS; AND (II) FOR SALE OF UNREGISTERED SECURITIES, FOR FRAUD, AND FOR AIDING AND ABETTING FRAUD

---

[1]      The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172).

The Woodbridge Liquidation Trust (the "Liquidation Trust" or "Plaintiff"), formed pursuant to the *First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors* dated August 22, 2018 (Bankr. Docket No. 2397) (as it may be amended, modified, supplemented, or restated from time to time, the "Plan"[2]), as and for its *Adversary Complaint: (I) For Avoidance and Recovery of Avoidable Transfers; and (II) For Sale of Unregistered Securities, for Fraud, and for Aiding and Abetting Fraud* (this "Complaint") against Eduardo G. Diaz ("Diaz") and Diaz Retirement Consultants ("DRC") and, together with Diaz, the "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      At least since August 2012 until shortly before they sought bankruptcy protection, Woodbridge Group of Companies, LLC and its many hundreds of debtor affiliates (collectively, the "Debtors") were operated by their founder and principal, Robert Shapiro ("Shapiro"), as a Ponzi scheme.  As part of this fraud, Shapiro and his lieutenants utilized the Debtors to raise over one billion dollars from approximately 10,000 investors as either Noteholders or Unitholders (collectively, "Investors").

2.      Those Investors, many of whom were elderly, often placed a substantial percentage of their net worth (including savings and retirement accounts) with the Debtors and now stand to lose a significant portion of their investments and to be delayed in the return of the remaining portion.  The quality of the Investors' lives will likely be substantially and adversely affected by the fraud perpetrated by Shapiro and his lieutenants.

3.      The purpose of this lawsuit is (i) to avoid and recover monies previously paid to Defendants by reason of these activities, on the grounds that such payments were actually

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

fraudulent and/or constructively fraudulent; and (ii) to hold Defendants liable for sale of unregistered securities, for fraud, and for aiding and abetting fraud.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this action under 28 U.S.C. §§ 157(a) and 1334. Counts I, II, III, and IV, of this adversary proceeding are core within the meaning of 28 U.S.C. § 157(b)(2)(B), (C), (F), and (H), and Counts V, VI, and VII are non-core. Plaintiff consents to entry of final orders or judgment by this Court on all counts.

5. Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

### *The Liquidation Trust*

6. On December 4, 2017 (the "Initial Petition Date"), certain of the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code. Other of the Debtors followed with their own voluntary cases (collectively with those of the original Debtors, the "Bankruptcy Cases") within the following four months (each such date, including the Initial Petition Date, a "Petition Date").

7. On October 26, 2018, this Court entered an order confirming the Plan (Bankr. Docket No. 2903).

8. The Plan provides for, *inter alia*, the establishment of the Liquidation Trust on the Effective Date of the Plan for the benefit of the Liquidation Trust Beneficiaries in accordance with the terms of the Plan and the Liquidation Trust Agreement. *See* Plan §§ 1.75, 5.4.

9. The Effective Date of the Plan occurred on February 15, 2019.

2

10.     On February 25, 2019, the Court entered an order closing the Bankruptcy Cases
of all Debtors except Woodbridge Group of Companies, LLC and Woodbridge Mortgage
Investment Fund 1, LLC (together, the "Remaining Debtors").  The Remaining Debtors'
Bankruptcy Cases are jointly administered under Case No. 17-12560 (BLS).

11.     On the Effective Date, the Liquidation Trust was automatically vested with all of
the Debtors' and the Estates' respective rights, title, and interest in and to all Liquidation Trust
Assets.  *See* Plan § 5.4.3.  Further, the Liquidation Trust, as successor in interest to the Debtors,
has the right and power to file and pursue any and all "Liquidation Trust Actions" without any
further order of the Bankruptcy Court.  *Id.* § 5.4.15.  "Liquidation Trust Actions" include, *inter
alia*, "all Avoidance Actions and Causes of Action held by the Debtors or the Estates …."  *Id.*
§ 1.76.

12.     In addition to its status as successor in interest to the Debtors and their estates, the
Liquidation Trust also holds claims held by Investors who elected to contribute to the
Liquidation Trust certain causes of action that those Investors possess against individuals such as
Defendants (the "Contributed Claims").  *Id.* § 1.28 (defining "Contributed Claims" to include
"All Causes of Action that a Noteholder or Unitholder has against any Person that is not a
Released Party and that are related in any way to the Debtors, their predecessors, their respective
affiliates, or any Excluded Parties, including … all Causes of Action based on, arising out of, or
related to the marketing, sale, and issuance of any Notes or Units; … all Causes of Action based
on, arising out of, or related to the misrepresentation of any of the Debtors' financial
information, business operations, or related internal controls; and … all Causes of Action based
on, arising out of, or related to any failure to disclose, or actual or attempted cover up or

3

obfuscation of, any of the conduct described in the Disclosure Statement, including in respect of any alleged fraud related thereto").

**Defendants**

13.     Defendant Diaz is an individual residing in the state of Mississippi.  Upon information and belief, Defendant Diaz also did business as DRC.  Upon information and belief, DRC is a Mississippi entity that is owned, managed, dominated, and controlled by Defendant Diaz.  Upon information and belief, Defendants acted as financial advisors and/or brokers that sold securities to the public and provided investment services.

14.     Defendants sold Notes and Units to unsuspecting Investors, created marketing materials and sales scripts to facilitate the sale of Notes and Units to unsuspecting Investors (often targeting unsophisticated, elderly investors with Individual Retirement Accounts).  In so doing, Defendants made materially false and fraudulent statements to induce Investors to provide money.  In connection with such conduct, Defendants, directly or indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and of the mails.

## FACTUAL BACKGROUND

**The Fraud**

15.     At least since July 2012 until shortly before they sought bankruptcy protection, the Debtors were operated as a Ponzi scheme.  As this Court explained in its order confirming the Plan:

> The evidence demonstrates, and the Bankruptcy Court hereby finds, that
> (i) beginning no later than July 2012 through December l, 2017, Robert H.
> Shapiro used his web of more than 275 limited liability companies,
> including the Debtors, to conduct a massive Ponzi scheme raising more
> than $1.22 billion from over 8,400 unsuspecting investors nationwide;
> (ii) the Ponzi scheme involved the payment of purported returns to

4

existing investors from funds contributed by new investors; and (iii) the
Ponzi scheme was discovered no later than December 2017.

16.     The securities sold by Defendants (*i.e.*, the Debtors' Notes and Units) were not

registered with the Securities and Exchange Commission (the "SEC") or applicable state

securities agencies and there was no applicable exemption from registration.  Nor were

Defendants registered as broker-dealers with the SEC or applicable state agencies.

17.     Investors were often told that they were investing money to be loaned with

respect to particular properties owned by third parties, that those properties were worth

substantially more than the loans against the properties, and that they would have the benefit of a

stream of payments from these third parties for high-interest loans, protected by security interests

and/or mortgages against such properties.  Shapiro and his lieutenants represented to Investors

that the Debtors' profits would be generated by the difference between the interest rate the

Debtors charged its third-party borrowers and the interest rate it paid Investors.

18.     In reality, these statements were lies.  Investors' money was almost never used to

make high-interest loans to unrelated, third-party borrowers, and there was no stream of

payments; instead, Investors' money was commingled and used for an assortment of items,

including maintaining a lavish lifestyle for Shapiro and his family, brokers' commissions,

overhead (largely for selling even more Notes and Units to Investors), and payment of principal

and interest to existing Investors.  The money that was used to acquire properties (almost always

owned by a disguised affiliate) cannot be traced to any specific Investor.  These are typical

characteristics of Ponzi schemes.

19.     Because the Debtors operated as a Ponzi scheme, obtaining new money from

Investors into the Ponzi scheme conferred no net benefit on the Debtors; on the contrary, each

new investment was a net negative.  Money was siphoned off to pay the expenses described

5

above, so that the Debtors actually received only a fraction of the investment dollars.  New money also perpetuated the Ponzi scheme, as such money enabled the Debtors to return fictitious "profits" to early Investors – an essential component of the scheme, because "repaying" early Investors led to new investments, without which the house of cards would fall, as it eventually did.  At the same time, each investment created an obligation to return to the defrauded Investor 100% of the investment, such that each new investment increased the Debtors' liabilities and ultimately left them unable to satisfy their aggregate liabilities.

***The Transfers***

20.     Plaintiff is informed and believes and thereupon alleges that within the two years preceding the Initial Petition Date, Defendants received transfers totaling not less than the amount set forth on Exhibit A hereto (the "Two Year Transfers"), including commission payments and other compensation.  The Two Year Transfers – including the transferor, its Petition Date, the date of each transfer, and the amount of each transfer – are set forth on Exhibit A.

21.     Plaintiff is informed and believes and thereupon alleges that within the four years preceding the Initial Petition Date, Defendants received transfers totaling not less than the amount set forth on Exhibit A hereto (the "Four Year Transfers" and, collectively with the Two Year Transfers, the "Transfers"), including commission payments and other compensation.  (The Four Year Transfers are inclusive of the Two Year Transfers, but Plaintiff does not seek to recover the same sum more than once.)  The precise Four Year Transfers – including the transferor, its Petition Date, the date of each transfer, and the amount of each transfer – are set forth on Exhibit A.

6

## FIRST CLAIM FOR RELIEF

### Avoidance and Recovery of Actual Intent Fraudulent Transfers – Bankruptcy Code

22.     Plaintiff realleges and incorporates herein Paragraphs 1 through 21, as if fully set forth herein.

23.     The Two Year Transfers constituted transfers of the Debtors' property.

24.     The Two Year Transfers were made by the Debtors with actual intent to hinder or delay or defraud their creditors insofar as the services allegedly provided in exchange for such transfers perpetuated a Ponzi scheme.

25.     The Two Year Transfers were made to or for the benefit of Defendants.

26.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 548(a), 550(a), and 551: (a) avoiding the Two Year Transfers free and clear of any claimed interest of Defendants, (b) directing that the Two Year Transfers be set aside, and (c) recovering such Two Year Transfers or the value thereof from Defendants for the benefit of the Liquidation Trust.

## SECOND CLAIM FOR RELIEF

### Avoidance and Recovery of Constructive Fraudulent Transfers – Bankruptcy Code

27.     Plaintiff realleges and incorporates herein Paragraphs 1 through 26, as if fully set forth herein.

28.     The Two Year Transfers constituted transfers of the Debtors' property.

29.     The Two Year Transfers were made by the Debtors for less than reasonably equivalent value at a time when the Debtors (i) were insolvent; and/or (ii) were engaged or about to engage in business or a transaction for which any capital remaining with the Debtors were an

7

unreasonably small capital; and/or (iii) intended to incur, or believed that Debtors would incur, debts beyond their ability to pay as such debts matured.

30.     The Two Year Transfers were made to or for the benefit of Defendants.

31.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 548(a), 550(a), and 551: (a) avoiding the Two Year Transfers free and clear of any claimed interest of Defendants, (b) directing that the Two Year Transfers be set aside, and (c) recovering such Two Year Transfers or the value thereof from Defendants for the benefit of the Liquidation Trust.

## THIRD CLAIM FOR RELIEF

### Avoidance and Recovery of Actual Intent Voidable Transactions – State Law

32.     Plaintiff realleges and incorporates herein Paragraphs 1 through 31, as if fully set forth herein.

33.     The Four Year Transfers constituted transfers of the Debtors' property.

34.     The Four Year Transfers were made by the Debtors with actual intent to hinder or delay or defraud their creditors insofar as the services allegedly provided in exchange for such transfers perpetuated a Ponzi scheme.

35.     The Four Year Transfers were made to or for the benefit of Defendants.

36.     Each Debtor that made any of the Four Year Transfers had at least one creditor with an allowable unsecured claim for liabilities, which claim remained unsatisfied as of the Petition Date.

37.     The Four Year Transfers are avoidable under applicable law – California Civil Code section 3439.04(a)(1) and/or comparable provisions of law in other jurisdictions that have adopted the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act or the

8

Uniform Fraudulent Conveyance Act – by a creditor holding an allowed unsecured claim and thus by Plaintiff pursuant to Bankruptcy Code section 544(b).

38.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 544(b), 550(a), and 551: (a) avoiding the Four Year Transfers free and clear of any claimed interest of Defendants, (b) directing that the Four Year Transfers be set aside, and (c) recovering such Four Year Transfers or the value thereof from Defendants for the benefit of the Liquidation Trust.

### FOURTH CLAIM FOR RELIEF

**Avoidance and Recovery of Constructive Voidable Transactions – State Law**

39.     Plaintiff realleges and incorporates herein Paragraphs 1 through 38, as if fully set forth herein.

40.     The Four Year Transfers constituted transfers of the Debtors' property.

41.     The Four Year Transfers were made by the Debtors for less than reasonably equivalent value at a time when the Debtors (i) were insolvent; and/or (ii) were engaged or was about to engage in business or a transaction for which any capital remaining with the Debtors were an unreasonably small capital; and/or (iii) intended to incur, or believed that it would incur, debts beyond their ability to pay as such debts matured.

42.     The Four Year Transfers were made to or for the benefit of Defendants.

43.     At the time of and/or subsequent to each of the Four Year Transfers, each Debtor that made any of the Four Year Transfers had at least one creditor with an allowable unsecured claim for liabilities, which claim remained unsatisfied as of the Petition Date.

44.     The Four Year Transfers are avoidable under applicable law – California Civil Code section 3439.04(a)(2) and/or comparable provisions of law in other jurisdictions that have

adopted the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act or the

Uniform Fraudulent Conveyance Act – by a creditor holding an allowed unsecured claim and

thus by Plaintiff pursuant to Bankruptcy Code section 544(b).

45.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to

Bankruptcy Code sections 544(b), 550(a), and 551: (a) avoiding the Four Year Transfers free and

clear of any claimed interest of Defendants, (b) directing that the Four Year Transfers be set

aside, and (c) recovering such Four Year Transfers or the value thereof from Defendants for the

benefit of the Liquidation Trust.

## FIFTH CLAIM FOR RELIEF

### Sale of Unregistered Securities (Securities Act Sections 5(a), 5(c), and 12(a))

46.     Plaintiff realleges and incorporates herein Paragraphs 1 through 45, as if fully set

forth herein.

47.     The Notes and Units sold by Defendants were securities within the meaning of the

Securities Act.

48.     No registration statement was filed or in effect with the SEC pursuant to the

Securities Act with respect to the securities issued by the Debtors as described in this Complaint

and no exemption from registration existed with respect to these securities.

49.     From in or about July 2012 through at least December 4, 2017, Defendants

directly and indirectly:

  a.     made use of any means or instruments of transportation or communication
         in interstate commerce or of the mails to sell securities, through the use or
         medium of a prospectus or otherwise;

  b.     carried or caused to be carried securities through the mails or in interstate
         commerce, by any means or instruments of transportation, for the purpose
         of sale or delivery after sale; and/or

      c.        made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security,

without a registration statement having been filed or being in effect with the SEC as to such securities.

50.      By reason of the foregoing, Defendants violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

51.      The Investors who contributed their claims to the Liquidation Trust purchased the unregistered securities issued by the Debtors and as a direct and proximate result sustained significant damages.  Accordingly, the Liquidation Trust has standing under Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77*l*(a)(1), to bring a cause of action seeking damages based on Defendants' violations of Section 5(a) and 5(c) of the Securities Act.

52.      As a result of the foregoing, Plaintiff is entitled to judgment holding Defendants jointly and severally liable for the sale of unregistered securities, as set forth in Exhibit B, or in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### Fraud

53.      Plaintiff realleges and incorporates herein Paragraphs 1 through 52, as if fully set forth herein.

54.      Defendants misrepresented the facts to Investors, including by making affirmative misrepresentations and by concealing and failing to disclose the true facts.  Among the misrepresentations were that Investors were often told that they were investing money to be loaned with respect to particular properties owned by third parties, that those properties were worth substantially more than the loans against the properties, and that they would have the

11

benefit of a stream of payments from these third parties for high-interest loans, protected by security interests and/or mortgages against such properties.

55.     In reality, these statements were lies.  Investors' money was almost never used to make high-interest loans to unrelated, third-party borrowers, and there was no stream of payments; instead, Investors' money was commingled and used for an assortment of expenses, including maintaining a lavish lifestyle for Shapiro and his family, brokers' commissions, overhead (largely for selling even more Notes and Units to Investors), and payment of principal and interest to existing investors.  The money that was used to acquire properties (almost always owned by a disguised affiliate) cannot be traced to any specific Investor.

56.     Defendants made these misrepresentations knowingly, with scienter, and with intent to defraud Investors.

57.     The Investors who contributed their claims to the Liquidation Trust justifiably relied on Defendants' misrepresentations of facts, and as a direct and proximate result sustained hundreds of millions of dollars in damages.

58.     As a result of the foregoing, Plaintiff is entitled to judgment holding Defendants jointly and severally liable for fraud, as set forth in Exhibit B, or in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### Aiding and Abetting Fraud

59.     Plaintiff realleges and incorporates herein Paragraphs 1 through 58, as if fully set forth herein.

60.     Shapiro – an architect of the fraud – also misrepresented the facts to Investors, and did so knowingly, with scienter, and with intent to defraud Investors.  The Investors who

12

contributed their claims to the Liquidation Trust justifiably relied on Shapiro's

misrepresentations of facts, and as a direct and proximate result sustained hundreds of millions

of dollars in damages.

61.     Defendants knowingly and substantially assisted Shapiro in defrauding Investors.

62.     Defendants were aware of Shapiro's fraud and acted knowingly in providing

substantial and material assistance to Shapiro.

63.     Defendants substantially benefited by receiving income, commissions, and

bonuses.

64.     As a result of the foregoing, Plaintiff is entitled to judgment holding Defendants

jointly and severally liable for aiding and abetting fraud, as set forth in Exhibit B, or in an

amount to be proven at trial, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, Plaintiff requests that the Court enter

judgment:

(1)     On the first and second claims for relief, (a) avoiding the Two Year
        Transfers free and clear of any claimed interest of Defendants,
        (b) directing that the Two Year Transfers be set aside, and (c) ordering
        Defendants, jointly and severally, to pay to Plaintiff $68,386.72;

(2)     On the third and fourth claims for relief, (a) avoiding the Four Year
        Transfers free and clear of any claimed interest of Defendants,
        (b) directing that the Four Year Transfers be set aside, (c) ordering
        Defendants, jointly and severally, to pay to Plaintiff $354,798.28;

(3)     On the fifth claim for relief, holding Defendants jointly and severally
        liable for damages, in the amount of $1,405,869.02 for sale of Notes
        and/or Units as set forth in Exhibit B, or in an amount to be proven at trial,
        arising from Defendants' sale of unregistered securities;

(4)     On the sixth claim for relief, holding Defendants jointly and severally
        liable for fraud, for $1,405,869.02 for sale of Notes and/or Units as set
        forth in Exhibit B in an amount to be proven at trial;

13

(5)     On the seventh claim for relief, holding Defendants jointly and severally liable for aiding and abetting fraud, in the amount of $1,405,869.02 for sale of Notes and/or Units as set forth in Exhibit B, or in an amount to be proven at trial; and

(6)     On all claims for relief, awarding Plaintiff prejudgment interest as permitted by law, costs of suit, and such other and further relief as is just and proper.

Dated:   December 3, 2019          PACHULSKI STANG ZIEHL & JONES LLP
         Wilmington, Delaware

                                   _/s/ Colin R. Robinson_____
                                   Richard M. Pachulski (CA Bar No. 90073)
                                   Andrew W. Caine (CA Bar No. 110345)
                                   Bradford J. Sandler (DE Bar No. 4142)
                                   Colin R. Robinson (DE Bar No. 5524)
                                   919 North Market Street, 17th Floor
                                   P.O. Box 8705
                                   Wilmington, DE 19899 (Courier 19801)
                                   Telephone: 302-652-4100
                                   Fax: 302-652-4400
                                   Email: rpachulski@pszjlaw.com
                                           acaine@pszjlaw.com
                                           bsandler@pszjlaw.com
                                           crobinson@pszjlaw.com

                                   *Counsel to Plaintiff, as Liquidating Trustee of the*
                                   *Woodbridge Liquidation Trust*

14

Exhibit A
Commission Payments

| Debtor | Ck. No. | Petition Date | Clear Date | Name | Receipts | Disbursements |
|--------|---------|---------------|------------|------|----------|---------------|
| WOODBRIDGE GROUP OF COMPANIES, LLC | 12222 | 12/04/17 | 08/03/16 | EDUARDO G DIAZ | | $ 169.49 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 6593 | 12/04/17 | 06/20/16 | EDUARDO G DIAZ | | 6,250.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 5781 | 12/04/17 | 05/31/16 | EDUARDO G DIAZ | | 2,200.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 5782 | 12/04/17 | 05/31/16 | EDUARDO G DIAZ | | 9,750.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 4090 | 12/04/17 | 04/14/16 | EDUARDO G DIAZ | | 8,500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 4111 | 12/04/17 | 04/14/16 | EDUARDO G DIAZ | | 3,150.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 4112 | 12/04/17 | 04/14/16 | EDUARDO G DIAZ | | 4,150.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 3978 | 12/04/17 | 04/07/16 | EDUARDO G DIAZ | | 930.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 3467 | 12/04/17 | 03/18/16 | EDUARDO G DIAZ | | 1,400.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 2058 | 12/04/17 | 02/16/16 | EDUARDO G DIAZ | $ 180.00 | |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 2058 | 12/04/17 | 02/16/16 | EDUARDO G DIAZ | | 1,200.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 1796 | 12/04/17 | 02/16/16 | EDUARDO G DIAZ | | 950.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 1269 | 12/04/17 | 01/26/16 | EDUARDO G DIAZ | | 2,000.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 1270 | 12/04/17 | 01/26/16 | EDUARDO G DIAZ | | 4,000.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 1292 | 12/04/17 | 01/26/16 | EDUARDO G DIAZ | | 2,000.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 1292 | 12/04/17 | 01/26/16 | EDUARDO G DIAZ | 2,083.33 | |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 1292 | 12/04/17 | 01/26/16 | EDUARDO G DIAZ | | 1,250.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 33954 | 12/04/17 | 01/06/16 | EDUARDO G DIAZ | | 9,080.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 33955 | 12/04/17 | 01/06/16 | EDUARDO G DIAZ | | 1,250.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 33628 | 12/04/17 | 12/24/15 | EDUARDO G DIAZ | | 6,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 33467 | 12/04/17 | 12/14/15 | DIAZ RETIREMENT CONSULTANTS | | 3,250.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 33297 | 12/04/17 | 12/09/15 | DIAZ RETIREMENT CONSULTANTS | 69.44 | |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 33297 | 12/04/17 | 12/09/15 | DIAZ RETIREMENT CONSULTANTS | | 840.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 33298 | 12/04/17 | 12/09/15 | DIAZ RETIREMENT CONSULTANTS | | 2,400.00 |
| | | | | TOTALS - 2 YEAR | 2,332.77 | 70,719.49 |
| | | | | NET DISBURSEMENTS - 2 YEAR | | 68,386.72 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 32453 | 12/04/17 | 10/27/15 | DIAZ RETIREMENT CONSULTANTS | | 1,450.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 32492 | 12/04/17 | 10/26/15 | DIAZ RETIREMENT CONSULTANTS | | 2,500.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 32497 | 12/04/17 | 10/26/15 | DIAZ RETIREMENT CONSULTANTS | 1,041.67 | |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 32497 | 12/04/17 | 10/26/15 | DIAZ RETIREMENT CONSULTANTS | | 1,250.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 32498 | 12/04/17 | 10/26/15 | DIAZ RETIREMENT CONSULTANTS | | 2,600.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 32358 | 12/04/17 | 10/15/15 | DIAZ RETIREMENT CONSULTANTS | | 2,860.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 32359 | 12/04/17 | 10/15/15 | DIAZ RETIREMENT CONSULTANTS | | 2,100.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 32360 | 12/04/17 | 10/15/15 | DIAZ RETIREMENT CONSULTANTS | | 8,700.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 32206 | 12/04/17 | 10/06/15 | DIAZ RETIREMENT CONSULTANTS | | 3,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 32047 | 12/04/17 | 09/28/15 | DIAZ RETIREMENT CONSULTANTS | | 1,925.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 32061 | 12/04/17 | 09/28/15 | DIAZ RETIREMENT CONSULTANTS | | 1,050.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31912 | 12/04/17 | 09/21/15 | DIAZ RETIREMENT CONSULTANTS | 2,500.00 | |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31912 | 12/04/17 | 09/21/15 | DIAZ RETIREMENT CONSULTANTS | | 7,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31839 | 12/04/17 | 09/17/15 | DIAZ RETIREMENT CONSULTANTS | | 1,250.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31784 | 12/04/17 | 09/17/15 | DIAZ RETIREMENT CONSULTANTS | | 1,530.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31822 | 12/04/17 | 09/17/15 | DIAZ RETIREMENT CONSULTANTS | | 1,400.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31782 | 12/04/17 | 09/10/15 | DIAZ RETIREMENT CONSULTANTS | | 12,600.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31692 | 12/04/17 | 08/27/15 | DIAZ RETIREMENT CONSULTANTS | | 5,100.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31578 | 12/04/17 | 08/18/15 | DIAZ RETIREMENT CONSULTANTS | | 2,500.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31483 | 12/04/17 | 08/04/15 | DIAZ RETIREMENT CONSULTANTS | | 2,950.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31484 | 12/04/17 | 08/04/15 | DIAZ RETIREMENT CONSULTANTS | | 5,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31383 | 12/04/17 | 07/20/15 | DIAZ RETIREMENT CONSULTANTS | | 2,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31368 | 12/04/17 | 07/15/15 | DIAZ RETIREMENT CONSULTANTS | | 4,150.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31308 | 12/04/17 | 07/15/15 | DIAZ RETIREMENT CONSULTANTS | | 5,750.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31309 | 12/04/17 | 07/13/15 | DIAZ RETIREMENT CONSULTANTS | | 7,400.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31310 | 12/04/17 | 07/13/15 | DIAZ RETIREMENT CONSULTANTS | | 14,650.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31318 | 12/04/17 | 07/13/15 | DIAZ RETIREMENT CONSULTANTS | | 4,250.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31292 | 12/04/17 | 07/13/15 | DIAZ RETIREMENT CONSULTANTS | | 5,500.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31245 | 12/04/17 | 06/29/15 | DIAZ RETIREMENT CONSULTANTS | | 8,100.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31166 | 12/04/17 | 06/25/15 | DIAZ RETIREMENT CONSULTANTS | | 2,850.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31167 | 12/04/17 | 06/25/15 | DIAZ RETIREMENT CONSULTANTS | | 2,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31168 | 12/04/17 | 06/25/15 | DIAZ RETIREMENT CONSULTANTS | 875.00 | |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31168 | 12/04/17 | 06/25/15 | DIAZ RETIREMENT CONSULTANTS | | 2,500.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31146 | 12/04/17 | 06/24/15 | DIAZ RETIREMENT CONSULTANTS | 2,500.00 | |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31146 | 12/04/17 | 06/24/15 | DIAZ RETIREMENT CONSULTANTS | | 3,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31147 | 12/04/17 | 06/24/15 | DIAZ RETIREMENT CONSULTANTS | 700.00 | |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31147 | 12/04/17 | 06/24/15 | DIAZ RETIREMENT CONSULTANTS | | 1,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31162 | 12/04/17 | 06/22/15 | DIAZ RETIREMENT CONSULTANTS | | 2,400.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 31163 | 12/04/17 | 06/22/15 | DIAZ RETIREMENT CONSULTANTS | | 6,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 30995 | 12/04/17 | 06/03/15 | DIAZ RETIREMENT CONSULTANTS | | 7,500.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 30898 | 12/04/17 | 05/20/15 | DIAZ RETIREMENT CONSULTANTS | | 5,750.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 30899 | 12/04/17 | 05/20/15 | DIAZ RETIREMENT CONSULTANTS | | 3,650.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 30900 | 12/04/17 | 05/20/15 | DIAZ RETIREMENT CONSULTANTS | | 3,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 30875 | 12/04/17 | 05/20/15 | DIAZ RETIREMENT CONSULTANTS | | 720.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 30738 | 12/04/17 | 05/04/15 | DIAZ RETIREMENT CONSULTANTS | | 2,550.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 30681 | 12/04/17 | 04/27/15 | DIAZ RETIREMENT CONSULTANTS | | 7,450.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 30440 | 12/04/17 | 04/07/15 | DIAZ RETIREMENT CONSULTANTS | | 125.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 30270 | 12/04/17 | 03/05/15 | DIAZ RETIREMENT CONSULTANTS | | 4,250.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 5095 | 12/04/17 | 02/26/15 | DIAZ RETIREMENT CONSULTANTS | | 2,083.33 |

Exhibit A
Commission Payments

| Debtor | Ck. No. | Petition Date | Clear Date | Name | Receipts | Disbursements |
|---|---|---|---|---|---|---|
| WOODBRIDGE STRUCTURED FUNDING, LLC | 5232 | 12/04/17 | 02/19/15 | DIAZ RETIREMENT CONSULTANTS | | 750.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 5233 | 12/04/17 | 02/19/15 | DIAZ RETIREMENT CONSULTANTS | | 2,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 5157 | 12/04/17 | 02/19/15 | DIAZ RETIREMENT CONSULTANTS | | 2,500.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 29009 | 12/04/17 | 02/13/15 | DIAZ RETIREMENT CONSULTANTS | | 234.90 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 30082 | 12/04/17 | 02/02/15 | DIAZ RETIREMENT CONSULTANTS | | 1,200.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 30045 | 12/04/17 | 01/20/15 | DIAZ RETIREMENT CONSULTANTS | | 1,500.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 29552 | 12/04/17 | 01/06/15 | DIAZ RETIREMENT CONSULTANTS | | 750.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 29587 | 12/04/17 | 01/06/15 | DIAZ RETIREMENT CONSULTANTS | | 750.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 28790 | 12/04/17 | 12/08/14 | DIAZ RETIREMENT CONSULTANTS | | 5,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 28719 | 12/04/17 | 12/08/14 | DIAZ RETIREMENT CONSULTANTS | | 2,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 28740 | 12/04/17 | 12/08/14 | DIAZ RETIREMENT CONSULTANTS | | 2,500.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 28138 | 12/04/17 | 11/04/14 | DIAZ RETIREMENT CONSULTANTS | | 5,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 27970 | 12/04/17 | 10/28/14 | DIAZ RETIREMENT CONSULTANTS | | 10,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 27971 | 12/04/17 | 10/27/14 | DIAZ RETIREMENT CONSULTANTS | | 10,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 27768 | 12/04/17 | 10/20/14 | DIAZ RETIREMENT CONSULTANTS | | 2,600.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 27176 | 12/04/17 | 09/29/14 | DIAZ RETIREMENT CONSULTANTS | | 5,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 27158 | 12/04/17 | 09/29/14 | DIAZ RETIREMENT CONSULTANTS | | 13,750.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 27157 | 12/04/17 | 09/25/14 | DIAZ RETIREMENT CONSULTANTS | | 13,750.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 26872 | 12/04/17 | 09/22/14 | DIAZ RETIREMENT CONSULTANTS | | 10,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 26326 | 12/04/17 | 09/02/14 | DIAZ RETIREMENT CONSULTANTS | | 500.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 26265 | 12/04/17 | 09/02/14 | DIAZ RETIREMENT CONSULTANTS | | 1,500.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 26268 | 12/04/17 | 09/02/14 | DIAZ RETIREMENT CONSULTANTS | | 1,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 25995 | 12/04/17 | 08/20/14 | DIAZ RETIREMENT CONSULTANTS | | 1,280.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 25711 | 12/04/17 | 08/04/14 | DIAZ RETIREMENT CONSULTANTS | | 870.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 25713 | 12/04/17 | 08/04/14 | DIAZ RETIREMENT CONSULTANTS | | 2,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 25689 | 12/04/17 | 08/04/14 | DIAZ RETIREMENT CONSULTANTS | | 3,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 25524 | 12/04/17 | 07/30/14 | DIAZ RETIREMENT CONSULTANTS | | 2,500.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 25525 | 12/04/17 | 07/30/14 | DIAZ RETIREMENT CONSULTANTS | | 1,500.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 25145 | 12/04/17 | 07/14/14 | DIAZ RETIREMENT CONSULTANTS | | 2,000.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 24989 | 12/04/17 | 07/07/14 | DIAZ RETIREMENT CONSULTANTS | | 1,500.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 24990 | 12/04/17 | 07/07/14 | DIAZ RETIREMENT CONSULTANTS | | 1,500.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 24811 | 12/04/17 | 06/30/14 | DIAZ RETIREMENT CONSULTANTS | | 1,500.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 24858 | 12/04/17 | 06/30/14 | DIAZ RETIREMENT CONSULTANTS | | 4,500.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 24708 | 12/04/17 | 06/30/14 | DIAZ RETIREMENT CONSULTANTS | | 1,200.00 |
| WOODBRIDGE STRUCTURED FUNDING, LLC | 24377 | 12/04/17 | 06/10/14 | DIAZ RETIREMENT CONSULTANTS | | 3,000.00 |
| | | | | TOTALS - 4 YEAR (INCL. 2 YEAR) | $ 9,949.44 | $ 364,747.72 |
| | | | | NET DISBURSEMENTS - 4 YEAR (INCL. 2 YEAR) | | $ 354,798.28 |

Exhibit B

Schedule of Claims Contributed by Investors

Broker(s): Diaz Retirement Consultants / Eduardo Diaz

| Investor Name | Outstanding Investor Principal Amounts | | Net/Allowed Claim Amounts | |
|---|---|---|---|---|
| | Class 3 | Class 5 | Class 3 | Class 5 |
| LARRY & SARAH KOEHN | $ - | $ 75,000.00 | $ - | $ 60,684.22 |
| MAINSTAR-FBO ALEEN DAMMANN | - | 44,000.00 | - | 36,923.31 |
| MAINSTAR-FBO ALLAN MICKSCH | - | 195,000.00 | - | 163,637.50 |
| PROV. TR GP-FBO ANNA F KELLEY-WINDERS IRA | - | 149,000.00 | - | 110,218.61 |
| PROV. TR GP-FBO CECILE ARLETH IRA | - | 285,000.00 | - | 218,809.73 |
| PROV. TR GP-FBO DOUGLAS PARKER IRA | - | 162,000.00 | - | 123,300.00 |
| PROV. TR GP-FBO KEITH BENVENUTTI IRA | - | 358,000.00 | - | 287,475.56 |
| PROV. TR GP-FBO ROY ANDREWS IRA | - | 65,000.00 | - | 43,098.12 |
| PROV. TR GP-FBO WADE BISHOP IRA | - | 293,000.00 | - | 207,906.57 |
| PROV. TR GP-FBO WALTER DAMMANN IRA | - | 115,000.00 | - | 88,134.73 |
| THE ARLETH FT-CURTIS B ARLETH | - | 100,000.00 | - | 65,680.67 |
| Totals | $ - | $ 1,841,000.00 | $ - | $ 1,405,869.02 |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1] | Case No. 17-12560 (BLS) |
| Remaining Debtors. | (Jointly Administered) |
| MICHAEL GOLDBERG, in his capacity as Liquidating Trustee of the WOODBRIDGE LIQUIDATION TRUST, | |
| Plaintiff, vs. | Adversary Proceeding Case No. 19-51071 (BLS) |
| EDUARDO G. DIAZ and DIAZ RETIREMENT CONSULTANTS, | |
| Defendants. | |

**SUMMONS AND NOTICE OF PRETRIAL CONFERENCE IN AN ADVERSARY PROCEEDING**

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

| | |
|---|---|
| Address of Clerk: | United States Bankruptcy Court 824 North Market Street, 3rd Floor Wilmington, DE 19801 |

At the same time, you must also serve a copy of the motion or answer upon the Plaintiff's attorney. Name and address of Plaintiff's attorneys:

PACHULSKI STANG ZIEHL & JONES LLP
Andrew W. Caine
Bradford J. Sandler
Colin R. Robinson
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.
YOU ARE NOTIFIED that a pretrial conference of the proceeding commenced by the filing of the complaint will be held at the following time and place.

| | |
|---|---|
| Address: United States Bankruptcy Court 824 N. Market Street, 6th Floor Wilmington, DE 19801 | Courtroom No. 1 Date and Time: Feb. 11, 2020 @ 10:00 a.m. (ET) |

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

**United States Bankruptcy**
**Court for the District of Delaware**                    */s/ Una O'Boyle*
Date: December 5, 2019                    Clerk of the Bankruptcy Court

---

[1] The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172).

## CERTIFICATE OF SERVICE

I, Colin R. Robinson, certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.  I further certify that the service of this summons and a copy of the complaint were made December 5, 2019 by:

☒      Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:

### SEE ATTACHED SERVICE LIST

☐      Personal Service: By leaving the process with defendant or with an officer or agent of defendant at:

☐      Residence Service: By leaving the process with the following adult at:

☐      Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:

☐      Publication: The defendant was served as follows: [Describe briefly]

☐      State Law: The defendant was served pursuant to the laws of the State of _____, as follows: [Describe briefly]                    (name of state)

Under penalty of perjury, I declare that the foregoing is true and correct.

Dated:  December 5, 2019

*/s/ Colin R. Robinson*
Colin R. Robinson (DE Bar No. 5524)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P O Box 8705
Wilmington, DE  19899-8705 (Courier 19801)

Woodbridge Adv. Service List

**First Class Mail**
EDUARDO DIAZ
2113 GOVERNMENT STREET, #D2
OCEAN SPRINGS, MS  39564

**First Class Mail**
DIAZ RETIREMENT CONSULTANTS
ATTN: EDUARDO DIAZ
2113 GOVERNMENT STREET, #D2
OCEAN SPRINGS, MS  39564

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1] | Case No. 17-12560 (BLS) |
| Remaining Debtors. | (Jointly Administered) |
| MICHAEL GOLDBERG, in his capacity as Liquidating Trustee of the WOODBRIDGE LIQUIDATION TRUST, | |
| Plaintiff, | Adversary Proceeding |
| vs. | Case No. 19-51071 (BLS) |
| EDUARDO G. DIAZ and DIAZ RETIREMENT CONSULTANTS, | |
| Defendants. | |

## NOTICE OF DISPUTE RESOLUTION ALTERNATIVES

As party to litigation you have a right to adjudication of your matter by a judge of this Court. Settlement of your case, however, can often produce a resolution more quickly than appearing before a judge. Additionally, settlement can also reduce the expense, inconvenience, and uncertainty of litigation.

There are dispute resolution structures, other than litigation, that can lead to resolving your case. Alternative Dispute Resolution (ADR) is offered through a program established by this Court. The use of these services are often productive and effective in settling disputes. **The purpose of this Notice is to furnish general information about ADR.**

The ADR structures used most often are mediation, early-neutral evaluation, mediation/arbitration and arbitration. In each, the process is presided over by an impartial third party, called the "neutral".

In mediation and early neutral evaluation, an experienced neutral has no power to impose a settlement on you. It fosters an environment where offers can be discussed and exchanged. In the process, together, you and your attorney will be involved in weighing settlement proposals and crafting a settlement. The Court in its Local Rules requires all ADR processes, except threat of a potential criminal action, to be confidential. You will not be prejudiced in the event a settlement is not achieved because the presiding judge will not be advised of the content of any of your settlement discussions.

Mediation/arbitration is a process where you submit to mediation and, if it is unsuccessful, agree that the mediator will act as an arbitrator. At that point, the process is the same as arbitration. You, through your counsel, will present evidence to a neutral, who issues a decision. If the matter in controversy arises in the main bankruptcy case or arises from a subsidiary issue in an adversary proceeding, the arbitration, though voluntary, may be binding. If a party requests *de novo* review of an arbitration award, the judge will rehear the case.

**Your attorney can provide you with additional information about ADR and advise you as to whether and when ADR might be helpful in your case.**

Dated: December 5, 2019

*/s/ Una O'Boyle*
Clerk of the Court

---

[1]  The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172).

DOCS_DE:226480.1 94811/003

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]  Remaining Debtors. | Case No. 17-12560 (BLS) (Jointly Administered) |
| MICHAEL GOLDBERG, in his capacity as Liquidating Trustee of the WOODBRIDGE LIQUIDATION TRUST, Plaintiff, vs. EDUARDO G. DIAZ and DIAZ RETIREMENT CONSULTANTS, Defendants. | Adversary Proceeding Case No. 19-51071 (BLS) |

### ALIAS SUMMONS AND NOTICE OF PRETRIAL CONFERENCE IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

| | |
|---|---|
| Address of Clerk: | United States Bankruptcy Court 824 North Market Street, 3rd Floor Wilmington, DE 19801 |

At the same time, you must also serve a copy of the motion or answer upon the Plaintiff's attorney. Name and address of Plaintiff's attorneys:

PACHULSKI STANG ZIEHL & JONES LLP
Andrew W. Caine
Bradford J. Sandler
Colin R. Robinson
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.
YOU ARE NOTIFIED that a pretrial conference of the proceeding commenced by the filing of the complaint will be held at the following time and place.

| | |
|---|---|
| Address: United States Bankruptcy Court 824 N. Market Street, 6th Floor Wilmington, DE 19801 | Courtroom No. 1 Date and Time: TO BE DETERMINED |

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

**United States Bankruptcy**
**Court for the District of Delaware**
Date: July 22, 2020

*/s/ Una O'Boyle*
Clerk of the Bankruptcy Court

---

[1] The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172).

## CERTIFICATE OF SERVICE

I, Colin R. Robinson, certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I further certify that the service of this summons and a copy of the complaint were made July 22, 2020 by:

☒      Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:

### SEE ATTACHED SERVICE LIST

☐      Personal Service: By leaving the process with defendant or with an officer or agent of defendant at:

☐      Residence Service: By leaving the process with the following adult at:

☐      Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:

☐      Publication: The defendant was served as follows: [Describe briefly]

☐      State Law: The defendant was served pursuant to the laws of the State of _____, as follows: [Describe briefly]          (name of state)

Under penalty of perjury, I declare that the foregoing is true and correct.

Dated: July 22, 2020

/s/ Colin R. Robinson
Colin R. Robinson (DE Bar No. 5524)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P O Box 8705
Wilmington, DE  19899-8705 (Courier 19801)

Woodbridge Adv. Service List

**FIRST CLASS MAIL**
EDUARDO DIAZ
107 SAN SOUCI AVE.
OCEAN SPRINGS, MS 39564-5340

**FIRST CLASS MAIL**
DIAZ RETIREMENT CONSULTANTS
ATTN: EDUARDO DIAZ
107 SAN SOUCI AVE.
OCEAN SPRINGS, MS 39564-5340

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1] | Case No. 17-12560 (BLS) |
| Remaining Debtors. | (Jointly Administered) |
| MICHAEL GOLDBERG, in his capacity as Liquidating Trustee of the WOODBRIDGE LIQUIDATION TRUST, | |
| Plaintiff, | Adversary Proceeding Case No. 19-51071 (BLS) |
| vs. | |
| EDUARDO G. DIAZ and DIAZ RETIREMENT CONSULTANTS, | |
| Defendants. | |

## NOTICE OF DISPUTE RESOLUTION ALTERNATIVES

As party to litigation you have a right to adjudication of your matter by a judge of this Court. Settlement of your case, however, can often produce a resolution more quickly than appearing before a judge. Additionally, settlement can also reduce the expense, inconvenience, and uncertainty of litigation.

There are dispute resolution structures, other than litigation, that can lead to resolving your case. Alternative Dispute Resolution (ADR) is offered through a program established by this Court. The use of these services are often productive and effective in settling disputes. **The purpose of this Notice is to furnish general information about ADR.**

The ADR structures used most often are mediation, early-neutral evaluation, mediation/arbitration and arbitration. In each, the process is presided over by an impartial third party, called the "neutral".

In mediation and early neutral evaluation, an experienced neutral has no power to impose a settlement on you. It fosters an environment where offers can be discussed and exchanged. In the process, together, you and your attorney will be involved in weighing settlement proposals and crafting a settlement. The Court in its Local Rules requires all ADR processes, except threat of a potential criminal action, to be confidential. You will not be prejudiced in the event a settlement is not achieved because the presiding judge will not be advised of the content of any of your settlement discussions.

Mediation/arbitration is a process where you submit to mediation and, if it is unsuccessful, agree that the mediator will act as an arbitrator. At that point, the process is the same as arbitration. You, through your counsel, will present evidence to a neutral, who issues a decision. If the matter in controversy arises in the main bankruptcy case or arises from a subsidiary issue in an adversary proceeding, the arbitration, though voluntary, may be binding. If a party requests *de novo* review of an arbitration award, the judge will rehear the case.

**Your attorney can provide you with additional information about ADR and advise you as to whether and when ADR might be helpful in your case.**

Dated: July 22, 2020

*/s/ Una O'Boyle*
Clerk of the Court

---

[1] The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172).

DOCS_DE:229838.1 94811/003

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.,*[1] | Case No. 17-12560 (BLS) |
| Remaining Debtors. | (Jointly Administered) |
| MICHAEL GOLDBERG, in his capacity as Liquidating Trustee of the WOODBRIDGE LIQUIDATION TRUST, | |
| Plaintiff, | Adversary Proceeding |
| vs. | Case No. 19-51071 (BLS) |
| EDUARDO G. DIAZ and DIAZ RETIREMENT CONSULTANTS, | |
| Defendants. | |

### AMENDED ALIAS SUMMONS AND NOTICE OF PRETRIAL CONFERENCE IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

| | |
|---|---|
| Address of Clerk: | United States Bankruptcy Court |
| | 824 North Market Street, 3rd Floor |
| | Wilmington, DE 19801 |

At the same time, you must also serve a copy of the motion or answer upon the Plaintiff's attorney. Name and address of Plaintiff's attorneys:

> PACHULSKI STANG ZIEHL & JONES LLP
> Andrew W. Caine
> Bradford J. Sandler
> Colin R. Robinson
> 919 North Market Street, 17th Floor
> Wilmington, DE 19899-8705 (Courier 19801)
> Telephone: (302) 652-4100

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.
YOU ARE NOTIFIED that a pretrial conference of the proceeding commenced by the filing of the complaint will be held at the following time and place.

| | |
|---|---|
| Address: United States Bankruptcy Court | Courtroom No. 1 |
| 824 N. Market Street, 6th Floor | |
| Wilmington, DE 19801 | Date and Time: TO BE DETERMINED |

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

**United States Bankruptcy**
**Court for the District of Delaware**                    */s/ Una O'Boyle*
Date: July 23, 2020                                      Clerk of the Bankruptcy Court

---

[1] The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172).

## <u>CERTIFICATE OF SERVICE</u>

I, Colin R. Robinson, certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.  I further certify that the service of this summons and a copy of the complaint were made July 23, 2020 by:

☒      Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:

### **SEE ATTACHED SERVICE LIST**

☐      Personal Service: By leaving the process with defendant or with an officer or agent of defendant at:

☐      Residence Service: By leaving the process with the following adult at:

☐      Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:

☐      Publication: The defendant was served as follows: [Describe briefly]

☐      State Law: The defendant was served pursuant to the laws of the State of _____, as follows: [Describe briefly]          (name of state)

Under penalty of perjury, I declare that the foregoing is true and correct.

Dated:  July 23, 2020

*/s/ Colin R. Robinson*
Colin R. Robinson (DE Bar No. 5524)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P O Box 8705
Wilmington, DE  19899-8705 (Courier 19801)

Woodbridge Adv. Service List

**FIRST CLASS MAIL**
EDUARDO DIAZ
107 SAN SOUCI AVE.
OCEAN SPRINGS, MS 39564-5340

**FIRST CLASS MAIL**
DIAZ RETIREMENT CONSULTANTS
ATTN: EDUARDO DIAZ
107 SAN SOUCI AVE.
OCEAN SPRINGS, MS 39564-5340

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1] | Case No. 17-12560 (BLS) |
| Remaining Debtors. | (Jointly Administered) |
| MICHAEL GOLDBERG, in his capacity as Liquidating Trustee of the WOODBRIDGE LIQUIDATION TRUST, | |
| Plaintiff, | Adversary Proceeding |
| vs. | Case No. 19-51071 (BLS) |
| EDUARDO G. DIAZ and DIAZ RETIREMENT CONSULTANTS, | |
| Defendants. | |

## NOTICE OF DISPUTE RESOLUTION ALTERNATIVES

As party to litigation you have a right to adjudication of your matter by a judge of this Court. Settlement of your case, however, can often produce a resolution more quickly than appearing before a judge. Additionally, settlement can also reduce the expense, inconvenience, and uncertainty of litigation.

There are dispute resolution structures, other than litigation, that can lead to resolving your case. Alternative Dispute Resolution (ADR) is offered through a program established by this Court. The use of these services are often productive and effective in settling disputes. **The purpose of this Notice is to furnish general information about ADR.**

The ADR structures used most often are mediation, early-neutral evaluation, mediation/arbitration and arbitration. In each, the process is presided over by an impartial third party, called the "neutral".

In mediation and early neutral evaluation, an experienced neutral has no power to impose a settlement on you. It fosters an environment where offers can be discussed and exchanged. In the process, together, you and your attorney will be involved in weighing settlement proposals and crafting a settlement. The Court in its Local Rules requires all ADR processes, except threat of a potential criminal action, to be confidential. You will not be prejudiced in the event a settlement is not achieved because the presiding judge will not be advised of the content of any of your settlement discussions.

Mediation/arbitration is a process where you submit to mediation and, if it is unsuccessful, agree that the mediator will act as an arbitrator. At that point, the process is the same as arbitration. You, through your counsel, will present evidence to a neutral, who issues a decision. If the matter in controversy arises in the main bankruptcy case or arises from a subsidiary issue in an adversary proceeding, the arbitration, though voluntary, may be binding. If a party requests *de novo* review of an arbitration award, the judge will rehear the case.

**Your attorney can provide you with additional information about ADR and advise you as to whether and when ADR might be helpful in your case.**

Dated:  July 23, 2020

*/s/ Una O'Boyle*
Clerk of the Court

---

[1] The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172).

DOCS_DE:229838.2 94811/003